**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Linda Buck, et al.,                                        Case No. 3:08CV998

             Plaintiff(s)

    v.                                              **ORDER**

Ford Motor Company, et al.,

             Defendant(s)

This is a product liability action. Plaintiff was injured in 2006, when J.D. White, driving a

1996 Ford Expedition, crashed through a brick wall and into Plaintiff. Plaintiff sued defendant Ford

Motor Company (Ford), claiming defendant's Next Generation Speed Control (NGSC) system was

faulty.

Plaintiff requested a 30(b)(6) witness on June 4, 2009, to testify regarding the NGSC system.

Defendant provided Victor Declercq, whom plaintiff deposed by telephone on August 11, 2009.

Plaintiff questioned Declerq about the design and safety features of the NGSC system and Ford's

design-related documents.

Plaintiff requested a second 30(b)(6) deponent to discuss the "U.K. investigation," which

inquired into throttles sticking in 1997-99 Ford Explorers. Defendant offered James Engle on August

26, 2010, for questioning . Engle testified about defendant's testing of the NGSC systems.

Plaintiff argues Declerq was an inappropriate witness because he was unfamiliar with tests

Ford conducted after he left the company's electromagnetic compatibility (EMC) facility. Plaintiff

seeks to have Ford produce a third 30(b)(6) witnessto testify about: 1) defendant's electronic testing

1

of the NGSC system; and 2) various failure modes and effects analyses pertaining to the NGSC system. Defendant argues that the new motion should be denied, as they have already provided two adequate witnesses for this line of inquiry.

Jurisdiction is proper under Fed. R. Civ. P. § 1331.

Pending is plaintiff's motion to compel Ford to designate a 30(b)(6) witness. [Doc. 96]. For the reasons discussed below, plaintiff's motion is denied.

## Background

The gravamen of plaintiff's suit is that the 1996 Expedition suddenly accelerated as its driver, White, pulled in front of the bakery where she worked, because of a design defect in the cruise control system. This defect, plaintiff contends, made the vehicle susceptible to unintended throttle opening and thus a potential loss of driver control. According to plaintiff's theory of the case, the unintended throttle opening and resultant sudden acceleration resulted from the impact of electromagnetic interference (EMI) on the cruise control's electronic throttle control system, NGSC.

Ford denies that there is any defect in the vehicle. It asserts the accident was due to driver error.

Plaintiff bases her claim of need to have Ford produce a third 30(b)(6) witness on her contention that the witnesses whom Ford has produced so far, DeClerq (about the design of the NGSC system) and Engle (about an investigation in Great Britain into sudden acceleration incidents involving a different Ford vehicle) were not qualified to testify about the issues in this case.

Declercq is a former Ford engineer with substantial experience in the areas of plaintiff's inquiry. He testified he was involved in designing and testing the NGSC system. The testing

examined the electromagnetic compatibility (EMC) of more than one hundred Ford vehicles with NGSC systems. He was also involved in the U.K. investigation.

Though Declercq supervised the EMC facility at Ford, plaintiff did not question Declercq about testing he did in that capacity. Plaintiff's questioning focused on whether Declercq reviewed design-related documents in Ford's "Reading Room," rather than Declercq's first-hand knowledge of the system's design. Though plaintiff had established Declercq's involvement in the NGCS system's design and testing, plaintiff asked him extensively about the U.K. Investigation. Declercq testified on his personal involvement with that investigation.

Believing Declercq was not a proper corporate representative for the topics she wished to cover, plaintiff asked Ford to designate a new 30(b)(6) deponent on April 1, 2009. This new deponent was to testify only on the U.K. investigation, specifically regarding throttle-sticking in 1997-99 Explorers. Defendant produced a second deponent, James Engle, a design analysis engineer. Engle testified extensively about the U.K. investigation, defendant's testing of the NGSC system during that investigation and testing at the component, system and vehicle levels.

At an October 15, 2010, *Daubert* hearing, Declercq testified about design and testing of the NGSC system. He described the multiple levels of Ford's testing, undertaken to ensure that EMI could not cause sudden acceleration.

After the hearing, plaintiff sought to exclude Declercq's testimony. Plaintiff argued DeClerq was not qualified to express his opinions about the design of the system because his role was to test systems during the development process.

I denied the motion, finding Declercq qualified to testify due to his knowledge, skill, experience, training and education. Further, I found that Declercq's testing provided a reliable basis

for his testimony. Declercq designed and tested vehicle electronics and evaluated vehicle electromagnetic compatibility for Ford since 1971. He also helped design Ford's electromagnetic compatibility facility in Romeo, Michigan and was a supervisor there from 1984 to 1994. Declercq directed electronic systems testing for all Ford vehicles, including testing of speed control systems.

On September 14, 2011, I granted plaintiff leave to file a motion to compel defendant to produce another 30(b)(6) witness. Two months later, on November 8, plaintiff contacted defendant with an e-mail requesting a new deponent. On November 15, plaintiff filed a 30(b)(6) motion to depose a witness to testify as to Ford's electronic testing of the NGSC system, as well as all applicable FMEAs.

Defendant opposes the request, arguing the request is improper because Ford already has supplied two 30(b)(6) witnesses. Plaintiff claimed Declercq was not an appropriate witness, and that he was unfamiliar with tests conducted subsequent to his departure, including tests conducted to determine whether vehicles equipped with the NGSC system are subject to unintended EMI-induced throttle opening. Demanding that I deny this third request, Ford claims plaintiff's new line of questioning,, is just a different litigation strategy

**Standard of Review**

"Determining the proper scope of discovery falls within the broad discretion of the trial court.." *E.E.O.C. v. JP Morgan Chase Bank, N.A.*, 2011 WL 1238183, *1 (S.D. Ohio) (citing *Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 402 (6th Cir.1998)).

A corporation receiving a deposition request under a 30(b)(6) motion must "designate one or more officer, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. . . . A person

4

designated must testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). "A Rule 30(b)(6) deponent testifies as to the knowledge of the corporation and the corporations' subjective beliefs and opinions and interpretation of documents and events." *Hilton Hotels Corp. v. Dunnet*, 2002 WL 1482543, 2 (W.D. Tenn. 2002).

"[A 30(b)(6)] motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1).

### Discussion

### A. Filing in Good Faith

Before a party may move to compel a 30(b)(6) deponent, the party must certify that it has in "good faith" attempted to meet with the party failing to comply with disclosure or discovery. *Hilton-Rorar v. State & Fed. Comm'ns, Inc.*, 2019 WL 148127, *1 (N.D. Ohio).

Defendant argues plaintiff cannot certify that she conferred in good faith before filing her pending motion. Plaintiff sent a single e-mail requesting a new deponent a week before she filed her motion. A single e-mail does not fulfill Rule 37's good faith requirement. *See In re Johnson*, 408 B.R. 115 (Bkrtcy. S.D. Ohio) (holding a party had failed to meet Rule 37's good faith requirement with only a single e-mail, a single letter, and an unspecified, but small, number of phone calls ); *see also Shuffle Master*, *supra*, 170 F.R.D. 166 (noting that sending demand letters via facsimile and placing one phone call was insufficient to constitute actual "conferment" under Rule 37); *Adams v. Austal*, 2011 WL 3360019 (S.D.Ala. 2011) (noting that a single letter, even if extensively addressing a discovery dispute related to a 30(b) notice of deposition, is not sufficient to demonstrate a good faith attempt).

5

Although I granted leave to plaintiff to file her motion to compel production of a third 30(b)(6) witness, that did not excuse the lack of contact and consultation directed to reaching an agreement as to whether another witness existed and, if so, whether Ford would produce or oppose production of the witness. Though I could, I decline to deny plaintiff's motion on this basis.

### 2. Failure To Ask Relevant Questions During a 30(b)(6) Deposition[1]

Defendant argues that it provided proper witnesses, capable of answering plaintiff's current inquiries, in response to plaintiff's initial 30(b)(6) motion. It contends that plaintiff's failure to ask appropriate questions and any dissatisfaction with the answers to those questions do not require the deposition of new witnesses.

Counsel's failure to ask the deponent substantive questions on the designated topics of a deposition cannot support a motion to compel the party to produce a new deponent. *Cummings v. General Motors Corp.*, 2002 WL 32713320, *3 (W.D. Okla.) (corporation produced deponent knowledgeable about the designated topics and opposing party ended deposition without asking substantive questions on those topics); *see also Rivet v. State Farm Mut. Auto Ins. Co.*, 316 Fed.Appx. 440, 448 (6th Cir. 2009) (affirming district court's refusal to grant discovery sanctions where company produced knowledgeable 30(b)(6) deponent whose testimony was limited due to opposing party's failure to provide the deponent with documentation that would create the foundation for proper testimony).

Plaintiff does not respond to this aspect of Ford's opposition. Instead, she contends that she has documents, based on the testing in Great Britain, evincing a connection between EMI and

---

[1] Although plaintiff's failure to satisfy Rule 37 before filing its motion justifies denying the motion, I address this issue.

sudden, otherwise unexplained acceleration. She does not contend that these documents were not available to her counsel during the depositions and *Daubert* testimony of the DeClerq and Engle. She does not claim, in other words, that unanticipated discovery of these documents justifies her current request for another 30(b)(6) witness on substantially the same topics as she covered, or could have covered earlier.

To some extent, as I understand the issues and disputes in this case, I realize plaintiff apparently wants to ask questions on a different, but related topic – failure modes and effects analysis. But here, again, plaintiff does not explain why she did not raise that subject earlier – at latest, prior to or during the *Daubert* hearing.

In her reply brief, plaintiff asks, as an alternative to her demand for production of a third 30(b)(6) witness, to have Ford produce DeClerq and Engle for trial. That makes sense to me; plaintiff can ask those witnesses then about their knowledge of the documents, and, to the extent that they conflict with their testimony, impeach them.[2]

Finally, plaintiff's arguments, to a considerable extent, assail the adequacy of DeClerq as a 30(b)(6) witness. My findings overruling plaintiff's *Daubert* motion as to him implicitly, if not explicitly, encompass a finding that he was sufficiently knowledgeable on the subjects at issue to fulfill that role.

Plaintiff has not refuted Ford's contention that she could earlier have asked the questions she now seeks to ask of a third 30(b)(6) witness. Not having enquired of either or both of them, I agree with Ford that making it produce another such witness is not appropriate.but

---

[2] Using the documents to impeach does not, of course, make them admissible as substantive evidence. If plaintiff desires to offer them at trial, it can seek their admission on appropriate grounds.

**Conclusion**

For the foregoing reasons, it is hereby:

ORDERED THAT plaintiff's motion to compel [Doc. 96] be, and same hereby is denied.

A scheduling conference is set for March 19, 2012 at 2:30pm.  Out of town counsel may participate

by phone.

So ordered.


s/James G. Carr
Sr. United States District Judge

8