**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Linda Buck, et al.,                                                              Case No. 3:08CV998

          Plaintiffs

    v.                                                                                    **ORDER**

Ford Motor Company, et al.,

          Defendants

This case concerns injuries plaintiff Linda Buck sustained when a 1999 Ford Expedition, which defendant Ford Motor Company manufactures, crashed into Nickles Bakery, pinning Buck to a wall. Buck claims that the Expedition contained a defective cruise control system that caused the vehicle suddenly to accelerate. She asserts Ohio law claims of defective product design, inadequate warning, failure to conform to express representation, negligence and breach of warranty.

Jurisdiction is proper under 28 U.S.C. § 1332.

Pending is defendant's motion for summary judgment. [Doc. 103].

For the following reasons, I grant defendant's motion.

**Background**

On April 27, 2006, as plaintiff's late husband, J.D. White, driving his 1999 Expedition, was pulling into a parking space,  the vehicle accelerated. It went over the curb, broke through the store's front window, and struck Buck.

White was a former "two-footed" driver who used one foot for the gas and the other for the brake, although he stated that he did not do so anymore. He also drove with a cane in the well next to his feet. Shortly after the incident, he stated that he was unsure whether he hit the gas pedal or missed the brake pedal . Later he consistently asserted he hit the brake pedal while the car was accelerating.

Buck claims the Expedition was defectively manufactured. Initially, she argued that the vehicle's Next Generation Speed Control system (NGSC) was defective because a way that electromagnetic interference (EMI) emitting by the car caused sudden, uncontrollable acceleration. Buck sought to introduce expert testimony concerning the existence and effect of EMI on the NGSC, but I have rejected each of her two proffered experts under *Daubert*. [Doc. 98].

Buck, altering her theory of the case, now posits what is, essentially, a *res ipsa loquitur* claim, as to which Ford seeks summary judgment. As presently framed, Buck contends  the only possible explanations for the sudden acceleration of the vehicle are either driver error or defective design. Driver error, in her view, an unsustainable contention, she contends  the only explanation for the incident must therefore be some defect in design causing to sudden acceleration. Buck admits this defect cannot be proven with available scientific evidence. She argues her claim can stand on the lack of any reasonable alternative explanation for the vehicle's acceleration.

## Standard of Review

A party is entitled to summary judgment on motion under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, I accept the opponent's evidence as true and construe all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex*, *supra*, 477 U.S. at 323.

## Discussion

Plaintiff asserts five claims: defective product design, inadequate warning, failure to conform to express representation, negligence and breach of warranty. Defendant has moved for summary judgment on each. Plaintiff has failed to contest the motion as to her failure to conform, negligence and breach of warranty claims and so I grant summary judgment to defendant on each of those claims.

Plaintiff's claims of defective product design and inadequate warning remain.

### A. Defective Product Design

3

Plaintiff alleges defendant defectively designed the Expedition in violation of Ohio's Product Liability Act (OPLA), O.R.C. § 2307.75. Defendant argues that plaintiff cannot prove the defect she alleges because the claim is sufficiently complex that it requires expert testimony, of which plaintiff has none, to prevail on that claim, and because plaintiff can present no feasible alternative design as required by § 2307.75(F).

As a predicate matter, I will bring together the somewhat disparate threads of plaintiff's defect claim.

Plaintiff initially argued that the Expedition's cruise control servo malfunctioned due to EMI. The claimed defect, therefore, was inherent to the cruise control servo, which, plaintiff contended, was improperly shielded against such interference. Plaintiff acknowledges this claim cannot stand due to a lack of expert testimony as to its plausibility.

Plaintiff's argument now is that the defect is not necessarily a servo improperly shielded against EMI, but instead a servo that defendant cannot and could never properly shield against EMI – in other words, that their previous argument was causally backwards.

Instead of arguing that the servo generated interference against which it was inadequately shielded (*i.e.*, the servo caused its own malfunction), plaintiff now claims EMI is omnipresent being constantly generated randomly by the car's numerous electronic components. .

Plaintiff is attempting to convert her complex product defect claim into a *res ipsa loquitur* claim, with EMI, its origin within the vehicle unknowable and its cause and effect random, as the reason for the inferred accident. There being, accordingly to plaintiff, no other feasible alternative explanation for the vehicle's actions, she is entitled to a finding of liability.

### 1. *Res Ipsa* in the Product Defect Context

"The doctrine of res ipsa loquitur is not a substantive rule of law furnishing an independent ground for recovery; rather, it is an evidentiary rule which permits, but does not require, the jury to draw an inference of negligence when the logical premises for the inference are demonstrated." *Jennings Buick, Inc. v. City of Cincinnati*, 63 Ohio St.2d 167, 169 (1980).

> A plaintiff must establish two elements for the doctrine of res ipsa loquitur to apply: (1) [t]hat the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant; and (2) that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed.

*Nationwide Agribusiness Ins. Co. v. J.D. Equip., Inc.*, 2012 WL 195025, *4 (Ohio App.).

Taken in the light most favorable to the nonmoving party, on April 27, 2006, a 1999 Ford Expedition sped up and crashed through the front wall of a bakery, pinning plaintiff to the back wall. Something occurred that impaired or altered the operation of the car in such a way that the driver was, despite his own best efforts, unable to stop the acceleration. Plaintiff cannot identify the particular defect or defects that caused this acceleration, but the very fact that it occurred is, according to her, proof that defendant negligently designed the vehicle.

A *res ipsa* claim only works if the plaintiff can show that either no ordinary course of events could have caused the vehicle's movement or, had the defendant engaged in some standard of ordinary care, the accident would not have happened. Plaintiff cannot meet this element of a her *re ipsa* claim: there is no ordinary course of events or standard of ordinary care in which defendant could have engaged, because there exists neither an identifiable problem nor any way to avoid the phenomenon that creates the unidentifiable problem.[1]

---

[1] Defendant, on the other hand, is able to point to circumstances in which ordinary care would have avoided the accident: namely, Mr. Buck's post-accident statement about hitting the gas

5

**2. Necessity of Expert Testimony in a Complex Defect Claim**

As plaintiff cannot advance her *res ipsa* theory, I will address the theory more fully explained in her complaint and responsive pleadings: that the Expedition's cruise control servo produces EMI from which it is inadequately shielded, which in turn causes the servo to engage and the Expedition to suddenly accelerate.

To prove defective design, plaintiff must show: 1) there was a defect in the defendant's product; and 2) the defect existed when the product left defendant's control, and 3) the defect directly and proximately caused plaintiff's injuries. *E.g., Donegal Mut. Ins. v. White Consol. Indus., Inc.*, 166 Ohio App. 3d 569, 576 (2006). The plaintiff must also show that there is a "practical and technically feasible alternative design or formulation" that would resolve the alleged defect. O.R.C. § 2307.75(F).

When understanding the nature of the alleged defect requires "knowledge . . . beyond that possessed by the average lay person[,]" Ohio law requires expert testimony to establish both the defect and the practical and technically feasible alternative design. *Nationwide Mut. Ins. Co. v. ICON Health & Fitness, Inc.*, 2005 WL 1252543, *4 (Ohio App.).

Defendant argues that, absent expert testimony, plaintiff cannot make the requisite showing necessary for her defective design claim. Plaintiff asserts that Ohio does not require expert testimony for every complex defective design claim, and that she can prove the existence of a defect through Ford's own admission.

---

pedal.  Though Mr. Buck later retracted those statements, they could, if the jury gave them credit, justify a finding of his negligence and resultant proximate cause in defendant's favor.

Expert testimony is not required where the defendant admits the existence of the alleged defect. *Atkins v. General Motors Corp.*, 132 Ohio App.3d 556, 564 (1999) (holding where a manufacturer admitted the existence of a defective hinge in a service bulletin, expert testimony was not needed to prove the existence of the already-admitted defect). Circumstantial evidence may also suffice where an expert cannot prove the existence of the defect directly, but the cumulative weight of the expert testimony and evidence allow an inference that the product was in fact defective. *Pearce v. Fouad*, 146 Ohio App.3d 496, 504 (2001).

Plaintiff's contention that circumstantial evidence may suffice in a defective design case is accurate, but inapplicable here. Circumstantial evidence is of use to prove that a product "deviated in a material way from the design specifications, formula, or performance standards of the manufacturer, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards." O.R.C. § 2307.74; *see also Colboch v. Uniroyal Tire Co., Inc.*, 108 Ohio App.3d 448, 458 (1996).

Plaintiff has not shown and, without expert testimony, cannot show that the Expedition's cruise control servo deviated in such a material way from its design specifications. In both *Pearce* and *Colboch*, the plaintiffs had supporting expert testimony to demonstrate to a jury how the behavior of the products at issue was defective. *See Pearce*, 146 Ohio App.3d at 504; *Colboch*, 108 Ohio App.3d at 460. The fact that circumstantial evidence may prove a claim does not obviate the need to prove the underlying elements of her claim – namely, that the technically complex product at issue actually malfunctioned.

Plaintiff claims defendant has already admitted that its product was defective. She bases this contention on defendant's investigation of sudden acceleration incidents in the United Kingdom.

Defendant argues that its U.K. investigation neither constitutes an admission that EMI-induced sudden acceleration exists nor related to a cruise control system substantially similar to the Expedition's NGSC system to provide a basis for plaintiff's contentions.

Evidence of prior incidents is only admissible if the incidents are "substantially similar." *See, e.g., Renfro v. Black*, 52 Ohio St.3d 27, 31 (1990); *Eakes v. K-Mart Int'l Headquarters, Inc.*, 1999 WL 252481, *3 (Ohio App.). Substantial similarity "exists in incidents involving the same model, the same design, the same defect and occurring under similar circumstances." *Tolstih v. L.G. Elecs., U.S.A., Inc.*, 2009 WL 439564, *6 (S.D. Ohio). The U.K. investigation plaintiff refers to did not involve any allegations of cars at rest or near-rest accelerating from those positions; instead, the specifically named incidents all involved acceleration while underway at normal speed. The investigation also did not find at any point that EMI induced Expeditions to accelerate suddenly – even were the incidents substantially similar, the investigation does not show what plaintiff purports it does, and is not evidence that would suffice in lieu of expert testimony.

### 3. Feasible Alternative Design

Defendant also argues that plaintiff cannot show a practical and technically feasible alternative design that would solve the alleged EMI problem.[2] Plaintiff proposes three alternative designs: better wiring on the cabling surrounding the servo, a "killswitch" that would shut down a car's engine if it began suddenly accelerating, or removing the cruise control altogether.

---

[2] Plaintiff argues that the burden is instead on defendant to show that no technically feasible alternative design exists; this assertion contradicts Ohio law, O.R.C. § 2307.75(F), and would require defendant to research and then debunk a potentially infinite number of designs to fix a defect it contends does not exist.

As mentioned *supra*, plaintiff requires expert testimony on any proposed alternative design to show its practicality and feasibility. In support, plaintiff points to Samuel Sero's October 14, 2010, *Daubert* testimony, during which he discussed wiring and shielding issues with coaxial cable. This is insufficient to show a practical and technically feasible alternative design, as there is no indication that this alternative design of the servo's cabling system would actually solve the defect. The witness himself does not state that his proposed solution – rewiring every electronic circuit with coaxial cable – would be practical or technically feasible, and warns that this would increase the size of the wiring harnesses and cable assemblies in the vehicle. [Doc. 76, at 50-52].

Plaintiff's other proposed alternative designs are speculative, unsupported by any expert testimony. Its "killswitch" design would convert any car in which it had been activated into a careening, unpowered missile, with modern electronic safety provisions such as power steering and brakes unavailable. Removing cruise control from all cars is a drastic measure that, absent a showing to the contrary, which plaintiff has not made, is impractical and amounts to a judicial ban on a particular product.

Because plaintiff has no available expert testimony demonstrating the Expedition's alleged defect and has not shown any feasible alternative design, I grant summary judgment to defendants on her defective design claim.

**2. Plaintiff's Failure to Warn Claim**

Plaintiff claims that defendant failed to warn her of the dangers the Expedition posed to her in violation of O.R.C. § 2307.76. She argues that "where no warning is given, or where an inadequate warning is given, a rebuttable presumption arises, beneficial to the plaintiff, that the

failure to adequately warn was a proximate cause of the plaintiff's [use of the product]." *Seley v. G.D. Searle & Co.*, 21 Ohio St.2d 121, 200 (1981).

To bring a failure to warn claim, the plaintiff must have standing. Standing exists "when the plaintiff [her]self has suffered some threatened or actual injury resulting from the putatively illegal action." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (internal quote marks removed). "The plaintiff generally must assert [her] own legal rights and interests, and cannot rest [her] claim to relief on the legal rights or interests of third parties." *Id.*

Ohio law consistently treats failure to warn as a duty the manufacturer owes to the product's user. *See, e.g., Boyd v. Lincoln Elec. Co.*, 179 Ohio App.3d 559, 574 (2008) (holding that the manufacturer's duty is to provide a warning to the user, regardless of whether the user read it). There is no support in Ohio law for plaintiff's contention that a manufacturer is required to warn a third party who did not own or use its products of a danger when the manufacturer has no way of knowing if or when the party will ever come into contact with its products. This also contradicts the language of the statute itself, which requires a manufacturer to warn "in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm." O.R.C. § 2307.76(A)(1)(b).

Plaintiff's interpretation of Ohio's failure to warn law would create a virtually unlimited zone of manufacturer liability. There is no indication that this was Ohio's purpose in creating this cause of action, or that a claim for failure to warn accrues to a party who did not use the given product.

I grant defendant's motion for summary judgment on plaintiff's claim for failure to warn.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT:

Defendant's motion for summary judgment [Doc. 103] be, and the same hereby is granted.

So ordered.

s/James G. Carr<br>Sr. United States District Judge